REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2724

September Term, 2011

DEREK T. STEVENS

v.

YOKO TOKUDA

Eyler, Deborah S.,
Woodward,
Zarnoch,

JJ.

Opinion by Woodward, J.

Filed: February 25, 2014

The Circuit Court for Carroll County found Derek Stevens, appellant, in constructive civil contempt for failure to pay child support to Yoko Tokuda, appellee, on October 18, 2010. The circuit court did not impose a sanction, but ordered appellant, as a purge provision, to pay $300.00 per month toward his child support arrearage, as well as provide the court and appellee's attorney with his job search information on a regular basis. When appellant failed to comply with the purge provision, the court ultimately imposed 179 days of incarceration as a sanction in an order dated February 2, 2012.

During the same time period, appellant filed a motion to modify his child support obligation. A hearing was held before a master, who recommended that appellant's child support payments be reduced from $1,000.00 per month to $708.00 per month, notwithstanding a finding that appellant was currently unemployed. Appellant filed exceptions, and the court sustained those exceptions in part, but did not decide the new amount for appellant's child support payments. About six months later the court again considered appellant's motion to modify child support and decided to remand the motion to the master for the purpose of taking additional evidence. The remand order was contained in the same February 2, 2012 order that imposed the sanction of incarceration for appellant's contempt. This appeal followed.

On appeal, appellant presents five questions,[1] which we have re-phrased into three:

---

[1] Appellant's questions, as originally phrased, were:

1. Did the circuit court err in finding Stevens in contempt because the only evidence before the court was that Stevens was not able to pay

(continued...)

1. Did the circuit court err in finding appellant in constructive civil contempt and imposing a purge provision of future acts in its order of October 18, 2010?

2. Did the circuit court err by ordering appellant incarcerated for 179 days without a purge provision in its February 2, 2012 order and also err by denying appellant's petition for writ of habeas corpus seeking immediate release from incarceration?

3. Did the circuit court err by remanding appellant's motion to modify child support to a master for further evidence?

As we will explain, (1) we do not reach question 1 because of a lack of jurisdiction, (2) we vacate the balance of the period of incarceration imposed on appellant, and (3) we affirm the February 2, 2012 order of the circuit court in all other respects.[2]

## BACKGROUND

Appellant and appellee are the parents of a child, Raiden, who was born January 14,

_____

[1](...continued)
more in support during the time period in question?

2. Was the original order of contempt invalid insofar as it imposed a purge provision requiring Stevens to perform actions into the indefinite future?

3. Was the order incarcerating Stevens for 179 days an impermissible punitive sanction in a constructive civil contempt proceeding?

4. Was the Circuit Court's order remanding the matter of Stevens's motion to modify to the master improper?

5. Did the Circuit Court err in denying Stevens's petition for writ of habeas corpus seeking immediate release from unlawful incarceration?

[2] Appellee did not participate in the instant appeal.

2

1999. On August 27, 2009, the circuit court entered a judgment of absolute divorce between the parties. As part of the divorce judgment, the court ordered appellant to pay $1,000.00 per month in child support to appellee.

## I. Contempt

On March 8, 2010, appellee filed a Petition for Contempt, alleging in part that appellant had failed to make the required child support payments in violation of the circuit court's order. A hearing was held on appellee's petition on October 14, 2010, at the conclusion of which the court, among other things, found appellant in contempt for failure to pay the court-ordered child support payments. The court did not impose a sanction for appellant's contempt, but did include in its order dated October 18, 2010, the following purge provisions:

> **ORDERED**, that [appellant] shall pay $300.00 per month to purge the present child support arrearage, and it is further,
> **ORDERED**, that on the first day of each month, beginning on December 1, 2010 and extending until [appellant] is employed on a full-time basis, [appellant] shall provide this Court, and [appellee's] attorney, with a log containing the following information: the dates of any and all job interviews; a list of the names and addresses of any and all employers which [appellant] interviews with or submits resumes and/or applications to; the dates that any interviews take place or that applications and/or resumes are submitted; and any and all information regarding the status of any pending applications for employment . . . .

In its October 18, 2010 order the circuit court also scheduled a review hearing on appellee's petition for contempt for February 2011, which was subsequently postponed to March 17, 2011. Following a hearing on March 17, 2011, the court issued an order dated

March 18, 2011, in which the court found that appellant was in contempt of the purge provisions of the October 18, 2010 order. The court expressly deferred ruling on any sanction for appellant's contempt, but did modify the previous purge provisions to require appellant's job search information be submitted to the court and to appellee's counsel on a weekly, instead of monthly, basis and to advise the court and appellee's counsel of appellant's employment within forty-eight hours of obtaining the same.

On January 5, 2012, appellee filed a Motion to Show Cause and Impose Sanctions, in which appellee alleged that appellant violated the March 18, 2011 order by failing to submit any job search information after July 2011. Appellee requested that the court impose sanctions on appellant.

On February 2, 2012, the circuit court held a hearing on appellee's January 5 motion to show cause.[3] At the conclusion of the hearing on February 2, 2012, the court issued an order in which it found "by clear and convincing evidence that [appellant] has failed to comply with this Court's purge provisions of March 18, 2011 having the present ability to do so." The court then imposed on appellant the following sanction for his contempt:

> **ORDERED**, that this Court imposes a sanction of One Hundred and Seventy-Nine (179) days to the Carroll County Detention Center; and it is further,
> **ORDERED**, that this Court orders a furlough from the Carroll County Detention Center of five (5) days in order to give [appellant] the opportunity to find employment; and it is further,

---

[3] As will be explained *infra*, the trial court also held a hearing on appellant's motion to modify child support.

4

**ORDERED**, that on [appellant's] five (5) furlough days, [appellant] shall be allowed to leave the Carroll County Detention Center at 9 a.m.; and it is further,

**ORDERED**, that on [appellant's] five (5) furlough days, [appellant] shall return to the Carroll County Detention Center by 5 p.m.; and it is further,

**ORDERED**, that [appellant's] employment search is confined to Carroll County, Maryland, Howard County, Maryland and Baltimore County, Maryland; and it is further,

**ORDERED**, that if [appellant] finds employment within the five (5) furlough days, [appellant] shall provide to the Court actual documentation that he has obtained employment.

As a result of the trial court's February 2, 2012 order, appellant was incarcerated. Appellant noted an appeal to this Court on February 29, 2012. After failing to obtain release from incarceration via either bail pending appeal or a petition for writ of habeas corpus, appellant moved this Court to stay the judgment of the circuit court and to release him from incarceration. This Court granted appellant's motion, and he was released on March 29, 2012.

### 2. Modification of Child Support

On December 17, 2010, while the litigation of appellee's petition for contempt was ongoing, appellant filed a motion to modify child support. In his motion appellant claimed that he was then unemployed and had been unable to maintain employment since the Fall of 2008. Appellant supported his claim by reference to his testimony at the October 14, 2010 hearing on appellee's petition for contempt.

On March 31, 2011, a hearing was held before a master on appellant's motion to modify child support. The master issued his report and recommendations on April 8, 2011,

5

in which he found, *inter alia*, that appellant was currently unemployed, but had the present ability to earn $50,000.00 per year. Based on that potential income, the master recommended a modification of appellant's child support payments from $1,000.00 per month to $708.00 per month. Appellant filed exceptions to the master's report, challenging, among other things, the finding that he could presently earn $50,000.00 per year. Appellee did not oppose or otherwise respond to appellant's exceptions. On August 30, 2011, the circuit court sustained appellant's exceptions in part. In a Memorandum Opinion, the court explained its decision, in relevant part:

> Master Constantinides found that [appellant] has been unemployed since 2009. The Master stated that [appellant] has tried to find work and he has been seeking positions with lower skill levels than he possesses and with lower pay. The Master did indicate that [appellant] did make $75,000.00 when he worked as a subcontractor with Lockheed Martin. However, the Master did not make a specific finding that [appellant] has voluntarily impoverished himself. [Appellant], by his employment logs and testimony, appeared to be seeking employment in the Washington D.C. area, as well in other geographic locations. Since the Master did not make a finding that [appellant] has voluntarily impoverished himself, the Master could not determine what [appellant's] potential income could be. The Master would have to determine his support obligation by using [appellant's] actual income at the time which was $0.00. However, it appears [appellant] has recently secured employment. As soon as [appellant] is able to document his income to this Court, this Court will recalculate his support obligations based on his new actual income.

Based on the Memorandum Opinion, the trial court issued an Order dated August 30, 2011 that simply "**ORDERED**, that [appellant's] Exceptions be, and are hereby, SUSTAINED in part." No further action was taken by the court at that time regarding

6

appellant's child support obligation as a result of appellant's exceptions to the master's report and recommendations.

Appellant's motion to modify child support was considered again by the circuit court at a hearing on February 2, 2012. At that hearing, appellee's counsel reminded the court that it had sustained appellant's exceptions "based on the fact that the Master did not find that before he imputed any income to [appellant] that he did not make a finding of fact that [appellant] was voluntarily impoverishing himself." Appellee's counsel advised the court: "My position would be that you send the case back to the Master for evidence on whether or not I can prove -- [appellee] can prove that [appellant] has voluntarily impoverish[ed] himself." In other words, according to appellee's counsel, a remand was necessary to "flesh out the facts as best we can to determine what the appropriate amount of child support is because it is really kind of inconceivable that [appellant] just says well, you know, my child support obligation is zero because I make no money." The trial court agreed, and in its February 2, 2012 order directed

> that this matter be, and is hereby, **REMANDED** to the Master on the issues that the Court sustained [appellant's] Exceptions on for the purpose of taking additional evidence and testimony on those particular issues[.]

As previously indicated, appellant noted a timely appeal from the court's February 2, 2012 order. Additional facts will be set forth as necessary to our discussion of the issues presented in the instant appeal.

7

## DISCUSSION

### 1. The Circuit Court's October 18, 2010 Contempt Order

Appellant contends that the circuit court erred in holding appellant in contempt in its October 18, 2010 order. In support of this assertion, appellant argues that "the evidence before the [circuit] Court at the October 14, 2010 hearing was such that the Court was clearly erroneous" in finding appellant in contempt after concluding that appellant did not sustain his "burden of showing, by a preponderance of the evidence, that he was unable to pay more than he did pay." Appellant further contends that the October 18 order "was improper for the [ ] reason that it purported to impose a purge provision requiring that [appellant] take actions into the indefinite future in order to purge the contempt." Appellant claims that "[s]etting [ ] open-ended tasks as purge provisions implicitly to avoid the future immediate imposition of a sanction of incarceration was not a lawful provision of a civil contempt order."

We do not reach appellant's contentions, however, because no timely appeal was taken from the circuit court's October 18, 2010 contempt order. Appellant did not file an appeal until February 29, 2012. Ordinarily, an appeal will only lie from a "final judgment." *See* Md. Code (1973, 2006 Repl. Vol.), § 12-301 of the Courts and Judicial Proceedings Article ("CJ II"). Nevertheless, § 12-301 "does not apply to appeals in contempt cases, which are governed by §§ 12-304 and 12-402" of the Article. CJ II § 12-302(b). "'A contempt proceeding, even though it may grow out of or be associated with another

8

proceeding, is ordinarily regarded as a collateral or separate action from the underlying case and as separately appealable, with appellate review normally limited to the contempt order itself.'" *Blake v. Blake*, 341 Md. 326, 332 (1996) (quoting *Unnamed Attorney v. Attorney Grievance Comm'n*, 303 Md. 473, 483 (1985)). The time period for filing an appeal from a finding of contempt is thirty days after the entry of the order making that finding. *See In re Ariel G.*, 153 Md. App. 698, 704 & n.1 (2003) (citing CJ § 12-304(a) (1973, 1998 Repl. Vol., 2001 Cum. Supp.); Md. Rule 2-601(b); Md. Rule 8-202(a)), *aff'd*, 383 Md. 240 (2004). Even if no party challenges the appealability of an order, appealability is a jurisdictional issue that we must resolve *sua sponte*. *See Johnson v. Johnson*, 423 Md. 602, 605-06 (2011).

At oral argument before this Court, appellant asserted that, because no sanction was imposed in the October 18, 2010 order, he had a right to appeal the contempt order at the time that the sanction was imposed on February 2, 2012, citing *Bryant v. Howard County Department of Social Services*, 387 Md. 30 (2005), as authority. Appellant's reliance on *Bryant*, however, is misplaced.

In *Bryant*, the Court of Appeals faced the question of "whether an appeal lies from a contempt finding that is unaccompanied by any sanction." *Id.* at 41. The Court traced the historical evolution of Maryland jurisprudence on the appealability of contempt orders. *Id.* at 42-45. Specifically, the Court reiterated that its dictum in *Lynch v. Lynch*, 342 Md. 509 (1996), that "'a finding of contempt, [even] where there is no possibility of enforcing compliance with the court order to which it relates, . . . is a form of punishment,'" remained

9

good law. *Id.* at 45 (emphasis omitted) (quoting *Lynch*, 342 Md. at 529). The Court held that, "[e]ven if we were not to regard [a mere contempt finding] as punishment, the plain wording and a common sense reading of [CJ] § 12-304 indicate an intent to permit an appeal from the adjudication of contempt itself, without regard to whether an immediate sanction is imposed." *Id.* What the *Bryant* Court did not say, contrary to appellant's argument, is that a party could wait to appeal a contempt order until a sanction was imposed.

Our conclusion on this issue is further compelled by our opinion in *In re Ariel G.*, 153 Md. App. 698. In *Ariel G.*, the circuit court entered an order finding the appellant in contempt on August 6, 2001. *Id.* at 701. Following subsequent hearings, the circuit court entered three other orders—on January 16, 2002, June 26, 2002, and September 29, 2002—in each of which it found that the appellant had not yet purged her contempt. *Id.* at 701-03. The appellant filed an appeal from only the June 26, 2002 order. *Id.* at 701, 703. We held that we did not have jurisdiction over the August 6, 2001, January 16, 2002, or September 29, 2002 orders, because "[t]he period for filing an appeal expired thirty days after that order was entered." *Id.* at 704 and n.1 (citing CJ § 12-304(a) (1973, 1998 Repl. Vol., 2001 Cum. Supp.); Md. Rule 2-601(b); Md. Rule 8-202(a)).

In the case *sub judice*, the circuit court issued a contempt order on October 18, 2010 and imposed the sanction of incarceration in an order dated February 2, 2012. The October 18, 2010 order was not formally entered on the docket until October 22, 2010. Appellant could have filed a timely appeal any time within thirty days after that date, i.e., on or before

10

November 21, 2010. *See* Md. Rule 8-202(a) (requiring an appeal to be brought within thirty days of the entry of an order or judgment). The instant appeal was not filed, however, until February 29, 2012, well over a year later. Thus, although we have jurisdiction over the February 2, 2012 order, we do not have jurisdiction over the October 18, 2010 order.

### 2. The Circuit Court's February 2, 2012 Order of Incarceration

Appellant asserts that the circuit court erred by ordering the punitive sanction of 179 days incarceration in the February 2, 2012 order, because the order did not give appellant "the present ability to purge the contempt." Appellant argues that "[i]ncarceration for constructive civil contempt is available only to compel immediate performance of an act, such as payment of a sum of money, which the Court finds the obligor is presently able to perform, but contumaciously refuses to." We agree.

"In support enforcement actions, contempt proceedings are guided by Maryland Rule 15-207." *Jones v. State*, 351 Md. 264, 272 (1998). The issue that appellant presents requires this Court to undertake a legal interpretation of Rule 15-207. Consequently, we review this issue *de novo*. *See Rawlings v. Rawlings*, 362 Md. 535, 555 n.19 (2001) (noting that issues of interpretation of Maryland Rules are treated the same as statutory interpretation issues).

Constructive civil contempt in a support enforcement action is governed by Maryland Rule 15-207(e).[4] Before a court may make a finding of contempt, the party seeking relief

_____

[4] Maryland Rule 15-207(e) "applies to proceedings for constructive civil contempt based on an alleged failure to pay spousal or child support, including an award of emergency
(continued...)

11

must prove "by clear and convincing evidence that the alleged contemnor has not paid the amount owed, accounting from the effective date of the support order through the date of the contempt hearing." Md. Rule 15-207(e)(2). If the court concludes that the party has met its burden of proof, the burden shifts to the alleged contemnor to prove

> by a preponderance of the evidence that (A) from the date of the support order through the date of the contempt hearing the alleged contemnor (i) never had the ability to pay more than the amount actually paid and (ii) made reasonable efforts to become or remain employed or otherwise lawfully obtain the funds necessary to make payment, or (B) enforcement by contempt is barred by limitations as to each unpaid spousal or child support payment for which the alleged contemnor does not make the proof set forth in subsection (3) (A) of this section.

Md. Rule 15-207(e)(3). If the alleged contemnor is unable to meet his burden, the court is instructed to make a finding of constructive civil contempt and must issue a written order. *See* Md. Rule 15-207(e)(4).

In issuing a constructive civil contempt order, the trial court must specify "(A) the amount of the arrearage for which enforcement by contempt is not barred by limitations, (B) any sanction imposed for the contempt, and (C) how the contempt may be purged." *Id.* Rule 15-207(e)(4) further requires that, "[i]f the contemnor does not have the present ability to purge the contempt, the order may include directions that the contemnor make specified payments on the arrearage at future times and perform specified acts to enable the contemnor

---

[4](...continued)
family maintenance under Code, Family Law Article, Title 4, Subtitle 5." Md. Rule 15-207(e)(1).

12

to comply with the direction to make payments." *Id.* Of particular importance to the case

*sub judice*,

> **the court may specify imprisonment as the sanction if the contemnor has the present ability to purge the contempt.**
>     If the contemnor does not have the present ability to purge the contempt, an example of a direction to perform specified acts that a court may include in an order under subsection (e) (4) is a provision that an unemployed, able-bodied contemnor look for work and periodically provide evidence of the efforts made. **If the contemnor fails, without just cause, to comply with any provision of the order, a criminal contempt proceeding may be brought based on a violation of that provision.**

Md. Rule 15-207 committee note (emphasis added). In this regard, the Court of Appeals has

counseled that, "unless and until the contemnor has been 'given an opportunity to show that

he ha[s] neither the estate nor the ability to pay his obligation and fail[s] to make such a

showing, he should not [be] incarcerated.'" *Jones*, 351 Md. at 276 (alterations in original)

(quoting *Johnson v. Johnson*, 241 Md. 416, 420 (1966)).

Maryland law has long recognized a clear distinction between civil contempt and

criminal contempt. Whereas a criminal probationer found to be in contempt may be

immediately incarcerated, "[i]mprisonment of the civil contemnor is conditional. It is based

entirely upon the contemnor's continued defiance, and thus, the civil contemnor is said to

hold the keys to the jailhouse door, and may terminate the incarceration any time he or she

satisfies the purge provision." *Id.* at 277 (internal citations and quotation marks omitted).

To that end, a court may not impose incarceration as a sanction for civil contempt when the

defendant is unable to meet the purge condition in time to avoid that incarceration. *See*

13

*Arrington v. Dep't of Human Res.*, 402 Md. 79, 107 (2007).

In our view, *Arrington* is dispositive of this issue. There, the named appellant[5] was bound by orders to pay child support to two mothers for his three children. *Id.* at 82. The appellant had had intermittent periods of employment but was not consistently earning a full salary. *Id.* at 83. The circuit court found that the appellant had the present ability to work, that he did work during the relevant period, and that he willfully failed to comply with the court's support orders; as a result, the court held the appellant in civil contempt. *Id.* at 84. The court then directed appellant to carry out future acts—namely, that he pay a lump sum on each arrearage and continue to pay child support. *Id.* At a subsequent hearing, one of the mothers informed the court that the appellant had failed to make the lump sum payments required under the court's order. *Id.* The court then decided, in response to this violation, to incarcerate the appellant and place him immediately on work release. *Id.* at 84-85. The court set the work release itself as the purge provision. *Id.* at 85. At a later hearing, the appellant's attorney objected to appellant's incarceration, arguing that it was improper, because the court had not made a finding that the appellant was presently able to meet the purge provision to avoid incarceration. *Id.* at 85.

The Court of Appeals vacated the circuit court's order of incarceration. *Id.* at 107.

---

[5] The *Arrington v. Department of Human Resources* decision combined two cases, *Arrington* and *Marcellas McLong v. Sharon Oliver*, which were argued on the same day and which presented the same issues, causing the Court of Appeals to address the two cases in a single opinion. 402 Md. 79, 81 & n.1 (2007). All citations to *Arrington* in this opinion refer to the contempt case involving defendant-appellant Brian Arrington only.

14

The Court initially noted that the "[p]resent inability to comply with the support order or to meet a purge established by the court . . . does *not* preclude a finding of contempt." *Id.* at 97 (citing Md. Rule 15-207(e)(2)). The Court then carefully distinguished between merely making a finding of contempt based on the present inability to pay, which is permissible, from ordering imprisonment based on the present inability to pay, which is not. *See id.* at 97-98. Because the circuit court's order made it impossible for the appellant to immediately carry out the purge provision—and thus avoid incarceration—the Court held that the work-release condition was impermissible. *See id.* at 107. The Court then discussed in detail situations where the court requires future acts as a purge condition, rather than the payment of a sum of money:

> **If unemployment is the problem, the court, upon determining the cause, may, under Rule 15-207(e)(4), enter reasonable and specific directives to deal with it.** The court may order the defendant to pursue employment opportunities in a specific manner. It may order the defendant to pursue necessary education or a diploma, degree, certificate, or license that may be necessary or helpful in making the defendant eligible for meaningful employment. It may direct the defendant to seek a form of treatment for health or addiction problems that has a reasonable chance of dealing with the problem sufficiently to qualify the defendant for meaningful employment. **In all instances, the directives must be specific and they must be reasonable. The programs must be available and affordable to the defendant, and they must be relevant to the objective.** The court may order the defendant to report periodically, and it may monitor compliance. It may modify the requirements as circumstances warrant. **If it appears that the defendant is wilfully not complying with the directives, the court may cause a criminal contempt proceeding to be filed, aimed at punishing defiance of the directives.** If, as a result of that defiance, the underlying support order remains in arrears, the State's Attorney, if so inclined, may

15

pursue a criminal action under Family Law Article, § 10-203.

*Id.* at 106 (emphasis added) (footnote omitted).

In the instant case, the circuit court's February 2, 2012 contempt order was legally deficient. Although the court could properly require that appellant periodically file job search logs, it erred by not affording appellant the opportunity at the February 2 hearing to purge his contempt prior to incarcerating him. As the Court of Appeals has explained:

> Sanctions for contempt ordinarily fall into three general categories: (1) determinate sanctions, which are criminal sanctions, such as a jail sentence of one year; (2) coercive sanctions, which are civil sanctions, such as imprisonment until the contemnor complies with an order of the court or a fine to be applied until the contemnor complies; and (3) remedial sanctions, such as a civil fine payable to the plaintiff to compensate the plaintiff for losses suffered as a result of the contemnor's non-compliance.

*Jones*, 351 Md. at 278.

In civil contempt proceedings like in the case *sub judice*, "'the sanction is coercive and must allow for purging.'" *Dodson v. Dodson*, 380 Md. 438, 448 (2004) (quoting *State v. Roll*, 267 Md. 714, 728 (1973)); *see also* Md. Rule 15-207(e)(4)(C). Indeed, the circuit court recognized the importance of this purge requirement, when it stated the following during the February 2 hearing:

THE COURT:    Let's say that . . . you still owe something.

[APPELLANT]:    Yes, but also this doesn't just go about -- just that -- this finds facts that basically says I don't have the ability to pay, okay? I -- I -- the original reason for me stopping --

16

THE COURT:          I understand.  That is why I set future acts,
                    [appellant] --

[APPELLANT]:        Yes.

THE COURT:          -- because if I say to somebody your purge
                    provision is to pay as ordered or your purge
                    provision is to pay X number of dollars in a
                    lump sum by a certain date, then many times
                    someone will say, "Well, Judge I'm not
                    working.  I can't pay" and **I have to be able to
                    find, in order to impose a sanction, that there
                    is an ability to pay, okay?**

                    **So what I did in this case was set
                    certain acts as purge provisions.  That is
                    providing certain records, information, a log
                    as a purge provision.  The real issue is why
                    did not you have the ability to do that?**

(Emphasis added).

When considering the imposition of the sanction of incarceration, the issue is not why

appellant was unable to submit the log in the past, but whether appellant was *presently* able

to submit a log, because incarceration requires a present ability to comply with the purge

condition and a willful choice by appellant not to comply in spite of that ability.[6]  *See* Md.

Rule 15-207(e)(4).  Furthermore, the court's imposition on appellant of a five-day work

---

[6] This is exactly the situation that the Court of Appeals anticipated in a footnote in *Arrington*.  The Court explained that, in theory, "it would be possible to coerce compliance" with requirements like having the contemnor provide job search logs in a civil contempt proceeding, but a court "would likely run into the same problem of being unable to incarcerate the defendant unless it could find that the defendant had the current ability to meet any purge."  402 Md. at 106 n.14.

release program while he was incarcerated is identical in its essential features to the program that was expressly disallowed by the *Arrington* Court. *See* 402 Md. at 85-86, 107.

There was nothing that appellant could do under the court's order of February 2, 2012 to prevent himself from being incarcerated on that day. Appellant was thus caught in an impermissibly punitive cycle: in order to purge the contempt, he was required to be in a work release program; however, in order to be in the work release program, he was required to be incarcerated. Requiring incarceration as a precondition to purging a contempt order is erroneous under Rule 15-207(e).

Alternatively, the circuit court could have sent the matter to the Office of the State's Attorney, which could then, in its discretion, initiate subsequent criminal contempt proceedings. *See* Md. Rule 15-207 committee note (noting that if the contemnor lacks the present ability to purge the contempt and then fails to comply with future court-ordered specified acts, "a criminal contempt proceeding may be brought based on a violation of that provision"). Although we sympathize with the circuit court when it was faced with the dilemma of multiple instances of contumacious behavior on the part of appellant, the court could not do what it did in this case: incarcerate appellant without setting a purge provision with which appellant had the present ability to comply to avoid incarceration. We shall, therefore, vacate the balance of appellant's 179-day sentence.

3. *The Circuit Court's Order Remanding Appellant's Motion to Modify Child Support*

Appellant contends that the circuit court erred in its February 2, 2012 order by

remanding appellant's motion to modify child support "for 'additional evidence and testimony' on issues already resolved in [a]ppellant's favor in the Court's August 30, 2011 memorandum and the order sustaining his exceptions." Appellant claims that the circuit court's August 30, 2011 "ruling that [appellant's] child support obligation during the period covered by his motion to modify was to be determined based on zero actual income" was a final ruling. According to appellant, Maryland Rule 9-208(i) only permits a circuit court to "remand a matter to the master for additional evidence . . . where the *excepting* party sets forth with particularity the evidence to be offered and the court determines that it should be considered." Because appellant "as the excepting party did not ask for a remand for any additional evidence," appellant concludes that the court lacked legal authority to order a remand.

As with the issue of the circuit court's order of incarceration, our resolution of this issue requires us to interpret a rule, namely, Rule 9-208, under a *de novo* standard. *See Rawlings*, 362 Md. at 555 n.19.

As a preliminary matter, we note that the circuit court shall refer the "modification of an existing order or judgment as to the payment of . . . support" to a standing master. Md. Rule 9-208(a)(1)(H). After receiving a matter on referral, the master shall hold a hearing and then make a report and recommendations to the circuit court, including factual findings and conclusions of law. *See* Md. Rule 9-208(b), (e). A party who disagrees with the master's report and recommendations may file exceptions with the circuit court within ten days after

19

the recommendations are placed on the record or served on the parties. Md. Rule 9-208(f).

Although we accept appellant's contention that he did not ask for a remand, we disagree with his conclusion. Pursuant to Rule 9-208(h), a circuit court "shall not direct the entry of an order or judgment based upon the master's recommendations . . . if exceptions are timely filed, *until the court rules on the exceptions*." Md. Rule 9-208(h)(1)(A) (emphasis added). In this case, the court never issued a final ruling on appellant's exceptions.

In his exceptions to the master's report and recommendations, appellant stated that "[t]here is no testimony to support a finding the defendant has a present ability to pay ~700 [sic] in child support and no testimony to support an arbitrary imputed salary of $50,000." Appellant stated further that "the Master [found] only the defendant is not currently employed and has been laid off since 2009. The [Report] & [Recommendations] made no finding of impoverishment of any, actual income." In its August 30, 2011 Memorandum Opinion, the circuit court sustained appellant's exceptions in part, explaining its reasoning as follows:

> Since the Master did not make a finding that [appellant] has voluntarily impoverished himself, the Master could not determine what [appellant's] potential income could be. The Master would have to determine his support obligation by using [appellant's] actual income at the time which was $0.00. **However, it appears [appellant] has recently secured employment. As soon as [appellant] is able to document his income to this Court, this Court will recalculate his support obligations based on his new actual income.**

(Emphasis added). The court concluded that the "Master did not make a finding that

20

[appellant] voluntarily impoverished himself," and that appellant's "child support obligation shall be based on his adjusted actual income." The order accompanying this Memorandum Opinion, however, stated simply that appellant's exceptions were "SUSTAINED, in part." The order contained no other ruling of the court.

Both the circuit court's August 30, 2011 Memorandum Opinion and order make clear that appellant's child support obligation should not have been $708.00 a month, but neither document sets forth what appellant's "new" or "adjusted" actual income, nor what his adjusted child support obligation should be. Indeed, the court explained at the February 2, 2012 hearing that it never made a final ruling on appellant's motion to modify child support:

> THE COURT: [R]emember[, appellant,] you were actually going to present some offer of employment. **What we basically did is kind of deferred everything pending -- we wanted to see something to document.**

(Emphasis added). Appellant never filed any such document between August 30, 2011 and February 2, 2012. Thus the court's August 30, 2011 ruling remained "pending," rather than final. *See O'Brien v. O'Brien*, 367 Md. 547, 555-56 (2002) (stating that "[m]erely sustaining, or overruling, exceptions does not end the case in the Circuit Court, and it therefore does not constitute a judgment, even if the parties and the court believe that, for practical purposes, the case is over").

In addition, appellant himself acknowledged that the court's August 30, 2011 Order was not final. Appellant filed an "Ex-Parte Motion for Relief" on December 28, 2011, in which he stated that he "ha[d] yet to receive a child support order" after the circuit court

21

sustained his exceptions in part and sought, in pertinent part, "finality . . . as a matter of law."

The circuit court responded to appellant's request for a final order by holding a hearing just over a month later on February 2, 2012. Instead of issuing a final ruling at the conclusion of the February 2 hearing, the court decided that appellant's motion to modify child support should be remanded to the master "for the purpose of taking additional evidence and testimony on those particular issues." This was proper, in our view.

The Court of Appeals has previously explained that

> **[u]pon consideration of an exception, the court normally will come to one of three conclusions**—that the exception has no substantive merit and that the court should act in conformance with the master's recommendation, **that the exception has some substantive merit and that the court should therefore reject the recommendation, in whole or in part, and make a different ruling, or that there is or may be merit to the exception but that some further proceeding is required before a final ruling is appropriate.**

*O'Brien*, 367 Md. at 555 (emphasis added); *see also Levitt v. Levitt*, 79 Md. App. 394, 399 (1989) (explaining that the circuit court "may remand to the Master or . . . conduct a *de novo* hearing, [ ] so that a sound factual base exists for the [court's] ultimate determination"), *cert. denied*, 316 Md. 549. That is precisely what happened here: the circuit court concluded that there was merit to appellant's exceptions, but determined that "some further proceeding is required before a final ruling is appropriate." *O'Brien*, 367 Md. at 555.

Appellant asserts, nevertheless, that the remand was not authorized by Maryland Rule 9-208(i)(1), which provides that

22

[t]he exceptions shall be decided on the evidence presented to the master unless: (A) the excepting party sets forth with particularity the additional evidence to be offered and the reasons why the evidence was not offered before the master, and (B) the court determines that the additional evidence should be considered. If additional evidence is to be considered, the court may remand the matter to the master to hear and consider the additional evidence or conduct a *de novo* hearing.

Rule 9-208(i)(1), however, governs the specific situation where the *excepting party* seeks to introduce new evidence that was not presented to the master; it does not govern the situation where, as here, the *court* determines that a remand is necessary for the master to consider further evidence. Such authority to remand to the master prior to a final ruling is derived from Maryland case law. *See O'Brien*, 367 Md. at 555-56; *Levitt*, 79 Md. App. at 399.

Finally, at oral argument before this Court, appellant asserted that the circuit court implicitly found that appellant owed $0.00 in monthly child support going back to December 17, 2010, when appellant filed his motion to modify child support. We disagree.

As previously indicated, the trial court did not make a final ruling on appellant's child support obligation as a result of the court's sustaining, in part, his exceptions to the master's report and recommendations. Even if the court had made such ruling, we cannot conclude that it would have automatically reduced the obligation going back to the date of the filing of appellant's motion to modify. Under Maryland law, "'[t]he court may not retroactively modify a child support award prior to the date of the filing of the motion for modification.'" *Krikstan v. Krikstan*, 90 Md. App. 462, 472-73 (1992) (quoting Md. Code (1984, 1991 Repl. Vol.), § 12-104(b) of the Family Law Article). However, "[t]he decision to make a child

support award retroactive to the filing of the [relevant motion] is a matter reserved to the discretion of the trial court." *Petitto v. Petitto*, 147 Md. App. 280, 310 (2002).  Thus the court had the discretion to reduce appellant's child support obligation retroactive to December 17, 2010, or retroactive to any other date between the date of the filing of appellant's motion and the court's final ruling on the motion.  On the record before us, we cannot say what the trial court would have done on the retroactivity issue.

Therefore, in the absence of a final ruling on appellant's motion to modify child support, and consistent with Maryland case law, we hold that the circuit court did not err by remanding such motion to the master for the taking of further evidence .

> **BALANCE OF THE 179-DAY SENTENCE OF INCARCERATION ORDERED BY THE CIRCUIT COURT FOR CARROLL COUNTY ON FEBRUARY 2, 2012 VACATED; ORDER AFFIRMED IN ALL OTHER RESPECTS. CARROLL COUNTY TO PAY COSTS.**